# UNITED STATES DISTRICT COURT
for the
Southern District of California

FILED
FEB 2 6 2016
CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY _____ DEPUTY

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )
  ) Case No. **16MJ0552**
iPhone Cellular Telephone IMEI: 359235061056270 )
and LG Cellular Telephone IMEI: 014153007649859 )
  )

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A

located in the _____ Southern _____ District of _____ California _____, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
☑ evidence of a crime;
☑ contraband, fruits of crime, or other items illegally possessed;
☑ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 8 U.S.C. § 1324(a)(1)(A)(ii) | Transportation of Illegal Aliens |
| 18 U.S.C. §371 | conspiracy |

The application is based on these facts:

☑ Continued on the attached sheet.
☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Felix I. Padilla, U.S. Border Patrol Agent
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 2/26/16

_____
*Judge's signature*

City and state: San Diego, California       Hon. William V. Gallo, U.S. Magistrate Judge
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF SEARCH WARRANT

I, Felix I. Padilla, Supervisory Border Patrol Agent with the United States Department of Homeland Security, Customs and Border Protection, United States Border Patrol, having been duly sworn, depose and state as follows:

1. I make this affidavit in support of an application for a search warrant in furtherance of an alien smuggling investigation conducted by U.S. Border Patrol ("USBP) Agents for the following target property: iPhone Cellular Telephone IMEI: 359235061056270 (hereinafter "**Target Telephone 1**") and LG Cellular Telephone IMEI: 014153007649859 (hereinto "**Target Telephone 2**"). The aforementioned cellular telephones were seized following the arrest of defendant Luis Antonio VALLADARES on January 26, 2016.

2. **Target Telephone 1** and **Target Telephone 2** were seized from Luis VALLADARES after he was arrested by Border Patrol Agents for his involvement in an alien smuggling event. It is believed that **Target Telephone 1** and **Target Telephone 2** were used by Luis VALLADARES to communicate with co-conspirators during an alien smuggling event on January 26, 2016. Luis VALLADARES was arrested and is being investigated for Transportation of Illegal Aliens into the United States, in violation of 8 U.S.C. § 1324(a)(1)(A)(ii), in the Southern District of California. Probable cause exists to believe that **Target Telephone 1** and **Target Telephone 2** contains evidence relating to violations of Title 8, United States Code section 1324. The specified telephone is currently in the possession of the United States Border Patrol, Imperial Beach Station located at 1802 Saturn Blvd, Imperial Beach, CA 92154.

3. Based upon my experience and training, and all the facts and opinions set forth in this Affidavit, I believe the items to be seized set forth in Attachment B (incorporated herein) will be found in the item to be searched as described in Attachment A (incorporated herein). These items may be or lead to: (1) evidence of the existence of alien smuggling or conspiracy to smuggle aliens in violation of 8 U.S.C. § 1324 and 18 U.S.C. §371 (conspiracy); (2) contraband, fruits of crime, or things otherwise criminally

possessed; and (3) property designed or intended for use, or which is or has been used as a means of committing criminal offenses.

## EXPERIENCE AND TRAINING

4. I am a USBP Agent within the United States Department of Homeland Security (DHS), Customs and Border Protection ("CBP"), USBP. I have been employed as a USBP Agent since January, 2003. I am presently assigned as a Supervisory Border Patrol Intelligence Agent to the Imperial Beach Station Intelligence Team (IMB SIT). I am a graduate of the United States Border Patrol Academy at the Federal Law Enforcement Training Center ("FLETC") in Artesia, New Mexico. I have received basic training in investigating alien smuggling, identifying immigration violations, and enforcing numerous immigration and customs laws within the United States.

5. I am currently assigned to conduct investigations of criminal violations relating to alien smuggling. I have participated in numerous alien smuggling-related investigations, many of which involved the arrest of persons for alien smuggling offenses. In those cases, I conducted interviews with the arrested persons and with their associates. Through these interviews, I have gained a working knowledge and insight into the activities and operations of alien smugglers.

6. Through the course of my training, investigations, prior law enforcement experience, and conversations with other law enforcement personnel, I am aware that it is a common practice for alien smugglers to work in concert with other individuals and to do so by utilizing cellular telephones and portable radios to maintain communications with co-conspirators in order to further their criminal activities. I am also aware that it is a common practice for alien smugglers to communicate with the smuggled aliens regarding smuggling arrangements and payment utilizing cellular telephones and portable radios. Conspiracies involving alien smuggling generate many types of evidence including, but not limited to, cellular phone-related evidence such as voicemail messages referring to the arrangements of travel and payment, names, photographs, text messages, and phone numbers of co-conspirators and aliens to be smuggled.

2

7. In preparing this affidavit, I have conferred with other agents and law enforcement personnel who are experienced in the area of alien smuggling investigations, and the opinions stated below are shared by them. Further, I have personal knowledge of the following facts, or have had them related to me by persons mentioned in this affidavit.

8. Based upon my training and experience as a USBP Agent, and consultations with law enforcement officers experienced in alien smuggling investigations, and all the facts and opinions set forth in this affidavit, I submit the following:

   a. Alien smugglers will use cellular telephones because they are mobile and they have instant access to telephone calls, text, web, and voice messages.

   b. Alien smugglers will use cellular telephones because they are able to actively monitor the progress of the illegal aliens while they are in transit.

   c. Alien smugglers and their accomplices will use cellular telephones because they can easily arrange and/or determine what time the smuggled aliens will arrive at predetermined locations.

   d. Alien smugglers will use cellular telephones to direct drivers to synchronize a drop off and/or pick up time of the smuggled aliens.

   e. Alien smugglers will use cellular telephones to notify or warn their accomplices of law enforcement activity including the presence and location of marked and unmarked units, as well as the operational status of USBP checkpoints.

   f. Alien smugglers will use cellular telephones to make arrangements with the smuggled aliens prior to the smuggling event, and to arrange for payment after the smuggling event.

## FACTS SUPPORTING PROBABLE CAUSE

9. On January 2, 2016, at approximately 11:00 a.m., Border Patrol Agent (BPA) Andrew Field was assigned to Alien Smuggler Identification and Deterrence (ASID)/Strike Team duties in the Imperial Beach Border Patrol Station's (IMB) area of

1 responsibility (AOR). He was conducting surveillance in the area known to Border Patrol Agents as the "Iron Gates", in an unmarked government owned vehicle (GOV).

10. BPA Field was conducting surveillance in the area because patrol agents were currently looking for two subjects that had absconded after illegally entering the United States. At approximately 11:30 a.m., BPA Field observed a white, four door, Mitsubishi Lancer (LP#: 7AMR530) pull into the area of the Iron Gates, but no one exited the vehicle. The vehicle was occupied by two Hispanic males, who were later identified as Luis Antonio VALLADARES and Uriel Matthew VALLADARES.

11. Less than a minute later, BPAs in the area apprehended two subjects hiding in some brush just south of Monument Road, which is located approximately 400 yards east of the Iron Gates. It is common for illegal aliens to attempt to further their illegal entry into the United States by concealing themselves in the brush in that area and wait for a load driver to pick them up. This is typically coordinated via the use of cell phones.

12. At the time of apprehension, Uriel VALLADARES was on his cell phone, and both aliens that were apprehended were in possession of cell phones. Immediately after the group of illegal aliens were apprehended, Luis and Uriel VALLADARES left the area at a high rate of speed. BPA Field followed the vehicle at a distance in his unmarked GOV for approximately 20 miles, from the Iron Gates to the intersection of Interstate 8 and Interstate 15.

13. On January 24, 2016, at approximately 9:45 a.m., BPA Andrew Field was assigned to ASID/Strike Team duties in the IMB AOR. BPA Field was conducting surveillance at the Iron Gates, while simultaneously, patrol agents were looking for two individuals who had crossed in Zone 1 near an area known as "Whiskey 15".

14. Whiskey 15 is approximately one half mile west of the Iron Gates and one half mile south. It is common that aliens make an illegal entry into the United States by jumping the fence near Whiskey 15 and walking through this brush to the Iron Gates, where they are then picked up and transported further north.

15. At approximately 9:50 a.m., BPA Field observed a black Chevy Malibu

(LP: CA7KFK637) pull up and park at the Iron Gates and single subject, Luis VALLADARES, exit the vehicle and began walking westbound along Monument Road toward Border Field State Park. He was wearing flip flops and shorts and was talking on a cell phone. The previous day, a smuggling event occurred in the same location, in which a single subject parked at the Iron Gates walked westbound towards Border Field State Park and returned to the Iron Gates accompanied by two Mexican nationals who had illegally crossed into the United States. It is common for illegal aliens to attempt to blend in with local traffic in this manner.

16. At approximately 10:00 a.m., agents working near Whiskey 15 apprehended two subjects. At approximately 10:05 a.m., Uriel VALLADARES, showed up driving the 2008 white Mitsubishi Lancer (LP: CA 7AMR530) that was seen on January 2nd. Uriel VALLADARES parked at the Iron Gates, but did not exit his vehicle. Luis VALLADARES returned to the Iron Gates at approximately 10:15 looking distraught.

17. Both subjects were interviewed as to why they were in the area. Uriel VALLADARES initially claimed that he was there to pick up a "friend", but quickly changed his story. He stated that he and his brother, Luis VALLADARES, were going to meet a friend at Border Field State Park's Friendship circle. Uriel VALLADARES claims they were there to see Francisco "Cocho".

18. Both Uriel and Luis VALLADARES appeared nervous and claimed that they traveled from Riverside, CA, a minimum two and a half hour drive, to visit a "friend" at Border Field State Park. Uriel VALLADARES claimed that they make the trip several times a week. Both Uriel and Luis VALLADARES left from the Iron Gates and did not visit Border Field State Park.

19. On January 26, 2016, Border Patrol Agents (BPA) Andrew Field, Maurilio Vargas, Gustavo Rios Jr., and Sergio Zapataroldan were working assigned ASID/ Intelligence gathering duties in the Imperial Beach Border Patrol Station's area of responsibility. At approximately 12:00 p.m., BPA Field began conducting surveillance of an area known to Border Patrol Agents as, "The Iron Gates."

20. At approximately 12:15 p.m., BPA Field observed a red Toyota Rav4 (LP: CA 3SIV536) drive westbound past his position and park at the Iron Gates. Two subjects; later identified as Jesus Manuel RUIZ, who was wearing a grey shirt, and Fernando MAGANA, who was wearing a black shirt; exited the vehicle and began walking west along Monument Road towards Border Field State Park.

21. At approximately 12:20 p.m., BPA Field observed a black Honda Pilot (LP: CA 5TYN922) approach the Iron Gates and park. A single subject, VALLADARES, exited the vehicle and walked westbound along Monument Road.

22. At approximately 12:23 p.m., BPA Maurilio Vargas approached BPA Field's position near the Iron Gates and took over surveillance of the Iron Gates. BPA Field relayed his previous observations to BPA Vargas and alerted him to the fact that the aforementioned Honda Pilot (LP: CA 5TYN922), may be associated with Alien Smuggling. BPA Field then proceeded to drive east along Monument Road for about a half mile and parked.

23. Upon arriving at the Iron Gates, BPA Vargas called BPA Field via cellphone and relayed to him the vehicle license plate of the black Honda Pilot (LP: CA 5TYN922). BPA Field notified San Diego Dispatch center/827 via service radio and they ran checks on the aforementioned license plate.

24. BPA Vargas observed a male subject wearing a blue windbreaker and a female wearing a bright reddish pink shirt walking behind the other two. These two were later identified as Alonso SIERRA-Perez and Elvira GUZMAN-De Jesus, and BPA Vargas observed them get into the back seat of the red Toyota Rav4, followed by MAGANA and RUIZ. RUIZ was observed getting into the driver's seat and MAGANA was observed getting into the front passenger seat. BPA Vargas also observed Luis VALLADARES following the group and get back into the Honda Pilot.

25. Approximately two minutes later, BPA Vargas observed the red Toyota Rav 4 and the black Honda Pilot started driving eastbound on Monument Road from the Iron Gates. When the red Toyota passed BPA Field's position on Monument Road. BPA Field

6

observed that there were two more people in the Toyota than he had seen previously. BPA Field alerted patrol agents in the area and marked units responded as well as Imperial Beach Intel Agents in unmarked GOVs.

26. At approximately 12:35 p.m., BPA Rios Jr. was conducting static surveillance at the intersection of Monument Rd. and Saturn Blvd. BPA Rios heard BPA Field transmit over his vehicle service radio that a red Toyota Rav4 was leaving the Border Field State Park area with two extra individuals than what it came with and was now travelling eastbound along Monument Rd. A short while after Agent Field's radio transmission, BPA Rios Jr. observed a red Rav4 pass his location with approximately four individuals inside. At this time he got behind the vehicle to continue mobile surveillance.

27. At approximately 12:35 p.m., Omar Alvarez, who was conducting Supervisory Border Patrol Agent (SBPA) duties in the Imperial Beach AOR, responded to the area. As SBPA Alvarez approached Monument Road while driving south on Hollister Street, he observed the two vehicles referenced by BPA Andrew Field driving northbound on Hollister Street, Agent Alvarez made a U-turn in order to get behind them. Now driving northbound on Hollister Street, SBPA Alvarez positioned his vehicle behind the first vehicle that was called out, a red Toyota Rav-4 (CA 3SIV536). SBPA Alvarez then activated his emergency lights and sirens and initiated a vehicle stop on the red Toyota Rav-4. As it pulled over; the second vehicle in question, the black Honda Pilot (CA 5TYN922) which was situated two vehicles behind SBPA Alvarez's vehicle, drove around his GOV. Once the red Toyota Rav-4 pulled over and backup agents approached the vehicle, SPBA Alvarez proceeded to initiate a stop on the black Honda Pilot. The black Honda Pilot yielded on the opposite side of the two lane road.

28. The black Honda Pilot yielded on the opposite side of the two lane road. BPA Zapataroldan and SBPA Alvarez approached the driver side of the Honda Pilot, identified themselves as United States Border Patrol Agents and questioned the male driver, Luis VALLADARES, as to his country of citizenship. Luis VALLADARES

7

stated that he was a United States citizen. SBPA Alvarez asked Luis VALLADARES where he was coming from, and he stated he had driven down from Riverside, California, to meet some girl walking on a trail near the beach.

29. BPA Rios Jr. approached the passenger side of the Toyota Rav-4, identified himself as a United States Border Patrol Agent, and questioned all four passengers as to their country of citizenship. The driver, RUIZ, and passenger, MAGANA, stated that they were United States citizens. The two rear passengers, SIERRA and GUZMAN, stated they were citizens and nationals of Mexico. SIERRA and GUZMAN also stated that they did not have any documents that allowed them to be in or stay in the United States.

30. At approximately 12:41 p.m., BPA Rios Jr. placed RUIZ and MAGANA under arrest in violation for 8 U.S.C. 1324 Alien Smuggling. SIERRA and GUZMAN were placed under arrest in violation of 8 U.S.C. 1325 Entry Without Inspection. All arrests occurred near 2200 Hollister Street, San Diego, California. Hollister Street is located approximately 3 miles west of the San Ysidro Port of Entry and approximately one mile north of the United States/ Mexico International border.

31. Based upon my experience and investigation in this case, I believe that Luis VALLADARES, as well as other persons as yet unknown, were involved in an on-going conspiracy to smuggle aliens. Based on my experience investigating alien smugglers, I also believe that Luis VALLADARES may have used **Target Telephone 1** and **Target Telephone 2** to coordinate with co-conspirators regarding the smuggling of illegal aliens, and to otherwise further this conspiracy both inside and outside the United States.

32. Based upon my experience and training, consultation with other law enforcement officers experienced in alien smuggling investigations, and all the facts and opinions set forth in this affidavit, I believe that information relevant to the alien smuggling activities of Luis VALLADARES and his co-conspirators, such as telephone numbers, made and received calls, contact names, electronic mail (email) addresses,

appointment dates, messages, pictures and other digital information are stored in the memory of the cellular telephone described herein.

## SEARCH PROTOCOL

33. It is not possible to determine, merely by knowing the cellular telephone's make, model and serial number, the nature and types of services to which the device is subscribed and the nature of the data stored on the device. Cellular devices today can be simple cellular telephones and text message devices, can include cameras, can serve as personal digital assistants and have functions such as calendars and full address books and can be mini-computers allowing for electronic mail services, web services and rudimentary word processing. An increasing number of cellular service providers now allow for their subscribers to access their device over the internet and remotely destroy all of the data contained on the device. For that reason, the device may only be powered in a secure environment or, if possible, started in "flight mode" which disables access to the network. Unlike typical computers, many cellular telephones do not have hard drives or hard drive equivalents and store information in volatile memory within the device or in memory cards inserted into the device. Current technology provides some solutions for acquiring some of the data stored in some cellular telephone models using forensic hardware and software. Even if some of the stored information on the device may be acquired forensically, not all of the data subject to seizure may be so acquired. For devices that are not subject to forensic data acquisition or that have potentially relevant data stored that is not subject to such acquisition, the examiner must inspect the device manually and record the process and the results using digital photography. This process is time and labor intensive and may take weeks or longer.

34. Following the issuance of this warrant, I will collect the subject cellular telephone and subject it to analysis. All forensic analysis of the data contained within the telephone and its memory cards will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

9

35. Based on the foregoing, identifying and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within ninety (90) days, absent further application to this court.

36. Following the issuance of this warrant, I will collect the subject cellular telephone and, with assistance if necessary from cellular telephone forensic examiners, will attempt to securely power the device, identify whether it is protected by a personal identification number (PIN), determine or circumvent the PIN and image or retrieve data subject to seizure pursuant to this warrant from the device. The search of the device or of an image on the data on the device will be limited to identifying and seizing data subject to seizure pursuant to this warrant and, in any event, will be limited to only the information to be found on basic cellular telephones: digital, cellular, and/or telephone numbers and/or direct connect numbers assigned to the device; call and direct connect history information; list of contacts stored on the device; text messages stored on the device; and, if equipped as a camera, photographs and videos stored on the device. In the event that I or other personnel lawfully conducting the analysis identify information pertaining to crimes outside the scope of the warrant, such information will not be used in any way unless a new warrant is obtained to search for such information.

37. I, or any other duly authorized federal agent, will personally serve the warrant requested above, and will be assisted by other duly authorized federal investigators.

## CONCLUSION

38. Based on all of the facts and circumstances described above, I believe that probable cause exists to conclude that Luis VALLADARES used **Target Telephone 1** and **Target Telephone 2** to facilitate alien smuggling. **Target Telephone 1** and **Target Telephone 2** were likely used to facilitate the offenses by transmitting and storing data,

which constitutes evidence, fruits, and instrumentalities of violations of Title 8, United States Code, Section 1324 and 18 U.S.C. §371 (conspiracy).

39. I also believe that probable cause exists to believe that evidence, fruits and instrumentalities of illegal activity committed by Luis VALLADARES continues to exist on **Target Telephone 1** and **Target Telephone 2**.

40. Based upon my experience and training, consultation with other agents in alien smuggling investigations, consultation with other sources of information, and the facts set forth herein, I know that the items to be seized set forth in Attachment B (incorporated herein) are likely to be found in the property to be searched described in Attachment A (incorporated herein). Therefore, I respectfully request that the Court issue a warrant authorizing me, a USBP Agent, or another federal law enforcement agent specially trained in digital evidence recovery, to search the item described in Attachment A, and seize the items listed in Attachment B.

41. I swear the foregoing is true and correct to the best of my knowledge and belief.

FELIX PADILLA
Supervisory Border Patrol Agent- Intelligence
U.S. Border Patrol

SUBSCRIBED AND SWORN TO ME BEFORE THIS 26 DAY OF FEBRUARY, 2016.

HONORABLE WILLIAM V. GALLO
United States Magistrate Judge

11

## ATTACHMENT A

An iPhone Cellular Telephone IMEI: 359235061056270 and LG Cellular Telephone IMEI: 014153007649859, seized pursuant to arrest of principal Luis Antonio VALLADARES, in violation of Title 8, USC 1324 on January 26, 2016. The cellular phones are currently in possession of the United States Border Patrol at the Imperial Beach Border Patrol Station.

## ATTACHMENT B

The following evidence to be searched for and seized pertains to violations of 18 U.S.C. § 371 (Conspiracy); and 8 U.S.C. § 1324 (Alien Smuggling):

1. Communications, records, or data including but not limited to emails, text messages, photographs, audio files, videos, or location data:

    a. tending to indicate efforts to smuggle aliens into the United States from Mexico or transport illegal aliens within the United States;

    b. tending to identify other facilities, storage devices, or services–such as email addresses, IP addresses, phone numbers–that may contain electronic evidence tending to indicate efforts to smuggle aliens into the United States from Mexico or transport illegal aliens within the United States;

    c. tending to identify co-conspirators, criminal associates, or others involved in efforts to smuggle aliens into the United States from Mexico or transport illegal aliens within the United States;

    d. tending to identify travel to or presence at locations involved in the smuggling of aliens into the United States from Mexico or transporting illegal aliens within the United States such as drop off and pick up locations, stash houses load houses, or delivery points;

    e. tending to indicate payment for the smuggling of aliens into the United States or the transportation of aliens within the United States;

    f. tending to identify the user of, or persons with control over or access to, the subject phone; or

    g. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data above.